Good morning, ladies and gentlemen. Our first case for argument this morning is United States v. Okeke. Mr. Ruth. Good morning. May it please the Court, my name is Robert Ruth. I represent the defendant appellant Orefo Okeke in this case. The district court erred when it applied the sophisticated means enhancement. There are two principal reasons why this was an error. First of all, the district court considered the actions of others in deciding whether there were sophisticated means. And second, the court found sophisticated means without having some benchmark of the typical fraud. The first issue is the judge looked at the underlying frauds and considered the complexity of the underlying frauds in deciding that this particular case, in this particular money laundering involves sophisticated means. You can't do that after the amendment. I think it's amendment 792. It used to be with sophisticated means you could look at what was reasonably foreseeable. That's not permitted anymore. The court is only allowed to consider the conduct that the defendant intentionally engaged in or caused. And in this particular case, it's clear that Mr. Okeke was not involved in the underlying frauds in any way. Mr. Ruth, let me ask you a question about the sophisticated means enhancement. In your view, what would be plain old money laundering, not sophisticated? That's the second problem with this case. I don't know because there's nothing in the record. In the case that I'm getting this from is U.S. v. Wayland. In Wayland, the government put on an expert. It was the case agent. And the case agent testified, here's the typical fraud. This is a fraud, not money laundering. Here's what a typical fraud is. Here's why this case exceeds the typical fraud. But we didn't say in that case that you had to proceed that way. It just was how it happened in that case. So again, what do you think would be plain vanilla money laundering? I don't know. I don't claim to be an expert in money laundering. I think that money laundering, by definition, is generally complicated. And if it's successful, it has to be somewhat complicated. Why by definition? All money laundering is is moving the proceeds of a crime around. Well, it's a little bit more than just moving it. It's actually trying to make it look legitimate. I mean, it's taking dirty money and making it clean or appear clean. Putting it in a bank account and taking it out again counts as money laundering. And I assume that's not sophisticated. But compared to that, just putting it in and taking it out again, this seems more. Well, it's definitely more than putting it in and taking it out. But other than just eyeballing it and just saying, well, I guess I'm just going to go based on my experience of what money laundering is. I don't think you can do that. I mean, we don't know it. We don't know what the parameters or all the different spectrum of possible money laundering examples are to decide what's sophisticated and what isn't sophisticated. We need some evidence to tell us what is the typical scheme. Have we ever held that? You haven't held it. Has any court of appeals held that you have to have evidence of the range of what money laundering schemes are for the sophistication enhancement can be used? No, but there's the other way. You're asking us to do something that no court in the U.S. has done. There needs to be some. That's not necessarily a bad thing. If the sentencing guidelines said that's what you needed to do, I could understand that. But where would this requirement of evidence come from? Well, it would come from the holding in Wayland where it was this court that said you have to compare it to the typical scheme. That doesn't actually come from the guidelines. That's what this court said, that sophisticated means is there's the typical scheme and it exceeds the typical scheme. But we also, there is another way that you can find sophisticated means, and that is the examples in the guidelines. The guidelines do give examples. Don't those examples include offshore accounts? They do. Were there offshore accounts in this instance? They do. But there were offshore accounts. There were accounts in Nigeria, and Mr. Okeke played some role in that, but we don't have any details of the role that he played in that. He didn't say that I set up the offshore accounts or I deposited the offshore accounts. I think what he said in his elocution was that I helped convert the money to Nigerian nyara and I helped get the money from the U.S. to a Nigerian account. So he played some role. That's all we know. There's no other evidence about the offshore accounts. So the whole purpose of the amendment to the sophisticated means enhancement, this amendment 792, is so that we can distinguish between who are the movers and shakers in the scheme and who are the smaller players. And that's why you're only held responsible for what you did, not what others did. And so in this particular case, with the example of the offshore accounts, there are other people that are involved in that. And all we know about Mr. Okeke is that he helped facilitate moving the money into the offshore accounts. So I think, though, Judge, it actually flows from the holding in Wayland that if you're going to set this standard and say it has to be more complicated than the typical scheme, you have to have some evidence to get you to that point. I still don't get the evidence point. We have how many hundred decisions just in the Seventh Circuit about money laundering? The judge can presumably look up what those are and see what the schemes entail. That's not evidence. You're not going to ask for the Seventh Circuit judges to come and testify about what those schemes entail. You learn, as most of us do in life, by reading. That's why I'm having trouble with this evidence business. I'm not limiting it to just evidence, because we also have the examples in the guidelines. If it fits one of the examples of sophisticated, well, then you have sophisticated means. But as far as looking at other cases, if you're looking at cases, let's say you looked at 100 cases, and then you said, all right, well, this is the least sophisticated, this is the most sophisticated, and you were going to try to figure out where ours fit in there. I suppose you could do that, but that's generally not the way we do it when we're figuring out guidelines. Generally, when we're figuring out guidelines is we look at the notes, we look at the examples, and we look at the case law. A case law that says this is sophisticated, this isn't sophisticated. But when we look at the case law, this court set up this situation of typical, sophisticated, and we need something to tip the scale. For example, the government says, well, he withdrew the money quickly. Well, okay, I don't know. Sometimes they withdrew the money within a day or two. Sometimes it was three or four or five days. Does that make it sophisticated? I think that we don't know that. There's nobody that looked at any cases and said, oh, there's cases that say that makes it sophisticated. Or the fact that some of the money was withdrawn in increments below 10,000. Well, a bunch of it was withdrawn in increments above 10,000. So really what we have in this case is we have the government just looking at every attribute about this case, splitting it all up into as many different pieces and saying, okay, that's sophisticated. Well, if they want to show us cases, this is sort of examples of sophisticated and unsophisticated, and how quick withdrawals or withdrawals in less than 10,000 or something like that, that fits in with our case law, well, then I would stand corrected. But we don't have that here. So in the absence of that, I think the only option would be to do what happened in Wayland. Bring in someone to testify who knows about fraud schemes, or I say fraud schemes, money laundering schemes, because that's what this case is, and compare this to the typical scheme. We go down the list. How do we know the government, they said, well, he used the accounts of a legitimate auto business. Well, does that make it more sophisticated? There's no case in the briefs that tells us that makes us more sophisticated. The speed of the withdrawals, the increments under 10,000. None of these things, there is no case in this circuit that declares those particular attributes sophisticated. I'll save the rest of my time for rebuttal. Thank you. Thank you, Counsel. Mr. Graver. May it please the Court, good morning, Your Honors. My name is Dan Graver. I represent the United States, and I handle the case down below at the district court level. So counsel's making two attacks. The first is a bootstrap argument, and the second is sort of the expert testimony argument for why you need sophisticated means to be able to make the comparison. Let me address first the bootstrap argument. There wasn't bootstrapping here by Judge Conley. Judge Conley found sophisticated means based upon Mr. Okeke's acts of money laundering themselves, and he went through and documented those and made the findings. Using his auto business as a cover was a rather sophisticated act because it was a two-part act. Number one, you had to use something that was innocuous that you could give to the fraudsters so that the victims wouldn't think, what's going on? Is this something going on with the Nigerian fraud scheme? No, it's just Cisco Service, the name of the corporation. Number two, it's a business, and it's a car business, which helped that when they lied, when the bankers would come in later on and ask, why do you have all that money in your account? They could lie and say, well, it was part of my business. It's in my business account. I'm the president of this business. This is for a business transaction, a car purchase. So that was the sophisticated part of that conduct. Then Judge Conley found when taking the money, once it got in, and remember this, it had to go in. You had to work on the front end with the fraudster to be able to tell the fraudster, here's the account to put it in, here's the name to put it in, so that they could tell the victims, give me your money, put it into this account. So Mr. Okeke was involved in the fraud on the front end. He was also involved on the fraud on the back end with the money laundering. When the money was put into the account, into one of his accounts that he controlled, then he was able to take the money out quickly because he wanted to make sure that the banks didn't take the money out and do reversals. Out of the 19 schemes that were involved in this, nine of them, the banks either did a partial or a complete reversal once the victim said, hey, I'm a victim of a fraud. Give me my money back, bank. Put the money back. In nine of those cases, the banks reacted. So what Judge Conley properly found was there was this anticipatory planning done by the defendant and by his co-defendant, Onuwama, where they were saying, look, we've got to get the money out quick. Within 24 hours, we've got to have it out. We've got to have it out in cash. We've got to have it out in cashier's checks. We've got to structure it so there's no CTRs. Eliminate the paper trail so nobody can find it. Move it into offshore accounts. Mr. Okeke said in his allocation letter, I moved it into offshore accounts, and I did it because I was greedy, and that's how I got it offshore. Those were all acts that Judge Conley said, these are a series of coordinated transactions that, when you view it as a whole, shows sophisticated means. Structuring? Sophisticated? Not stretching at all. That is, I think we've got sophisticated and then some because, think about it, you've got the use of the business as a cover story. Then you have all these acts. Oh, no, no, no. I get the argument about looking at it in total. I'm just wondering whether structuring is really all that sophisticated, how much it contributes to this overall picture. It's one of six acts that they did, and that's the argument. The defense is trying to cherry pick and pull apart and say, well, this one isn't on its own. And that's what Wayland stands for, Your Honors. It doesn't stand for the fact that you need an expert witness. It stands for the fact that you don't take one in isolation. One looking at itself, maybe that's not very elaborate. But when you put them together, you see a series of steps done that shows, well, they were planning and they executed it, and they were successful. And, you know, I would argue in the brief the defense says, well, all of this conduct shows that it was successful but it wasn't necessarily sophisticated. And the government's position is the complexity and the sophistication of the acts themselves prove the sophistication and prove that's how you get the success. The reason this thing was successful, it's not mutually exclusive terms. It can be successful and be sophisticated, and in this case that's what was going on. I assume you mean sophisticated among the schemes that get caught. A really sophisticated money laundering scheme would not be caught. Or perhaps it would be Bernie Madoff again going on for 25 years before being caught. They were doing it for two years, Judge. They got 19 people fleeced and they took 2.6 million. So they had a good run. It worked for a long time. But finally the IRS followed it and we traced it and we saw all this bank activity going on,  The second issue with this expert testimony issue, Judge, you mentioned it. There is no case law on this issue. Whalen doesn't stand for that point that you need expert testimony. In Whalen that was a jury trial, and so the court was talking about they had a witness on the stand explaining what Mr. Whalen did in a health care fraud scheme and that he didn't up-code the charges. Instead he just created a fake person and submitted fake invoices for a personal care worker for his mom. So this court has never held that you need to have expert testimony or a benchmark set. Application Note 9B doesn't say that you need that in the sensing guidelines. If you look at what the definition is, it doesn't say that you need expert testimony or a benchmark. It says here are the examples and it gives you the big four examples. And guess what? We've got one of the big four examples. We've got use of offshore accounts. So right out of the gate they lose just because we're right within the example in the application note. There's post-Whalen cases and counsel says there's no cases that are on point. I cited them, Gadar and Redman. Gadar is a money laundering case. Mr. Gadar ran a tobacco shop. He was taking money. All the cash that came in he skimmed out, took the skimmed cash, but cycled it through bank accounts, would get cash and cashier's checks, would use nominee accounts and put money in his relatives' names and then have them wire the money overseas. Gadar is a case that was post-Whalen, and in that case the circuit said, we're going to use that Whalen theory of a series of coordinated transactions when you view it as a whole, show sophisticated means. The other one is Redman. That was an individual, he said he was a doctor when he wasn't a doctor and he engaged in health care fraud and DEA fraud. Again, in that case this circuit held that even though all he did was he created fake diplomas, showing that he went to medical school, fake medical school certificate, submitted fake documents to DEA to get his registration so he could write prescriptions, and he argued this isn't alone, each one of these, it's just I went on the web and I got these and it's not very sophisticated. This court held when you look at it as a series of steps that you took to get the documents, convince your partner that you were a doctor when you weren't, convince the patients you were a doctor when you weren't, in total that shows sophisticated means. So there's cases that are out there that I cited in the brief that show that, in fact, you don't need expert testimony to make this finding, and in this case Judge Conley didn't err when he found that not only was Mr. Okeke engaging in acts of money laundering on his own, but the court correctly found, and this isn't bootstrapping, that when he went on the fraud part of it, the court said, and not only that, but let's look at his actions with regards to the fraud. He played a crucial role in the fraud. This doesn't work if you don't have the money launderer on the back end. The whole point of this is to have people part with their money and get your hands on their money, and you can't do that if you don't have the money launderer involved. Judge Conley correctly found that this defendant was involved on the front end of that with showing, hey, you have to give the fraudsters, the victim, you have to tell the victim, here's the account to put it into, and here's the name of the account. And he wasn't holding Mr. Okeke responsible for relevant conduct of other people, for Anuwama's conduct, for conduct of anybody else. He was holding him responsible for his conduct, being the money launderer on the front end of the fraud scheme, because this whole thing doesn't work unless you tell the victim, put it in this account. And then it worked. For two years they were able to fleece over 19 people of 2.6 million. Because of that, Your Honor, we believe the court did not err, and we'd ask you to affirm the judgment. Thank you. Thank you, counsel. Anything further, Mr. Bruch? You have about 30 seconds. Okay. It sounded to me like the government came very close to saying, successful means sophisticated. And just because this was a success, because they were successful, that's why we're here. If there was no money laundering, we wouldn't be here. And that's why we need some way to distinguish the typical from the sophisticated money laundering scheme. And he wasn't involved in the front end of the fraud. He wasn't involved in the fraud at all. He was involved at the very end. He was the last player. He had no role in the fraud, and Judge Conley held him responsible for the sophistication of the fraud. Thank you. Thank you very much. Mr. Ruth, we appreciate your willingness to accept the appointment in this case and your assistance to your client and the court. The case is taken under advisement.